Please all rise. Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Susan F. Hutchinson presiding. Please be seated. The second case on the docket this morning is 2-55-0436. In re Marriage of Sally Grossman. Also formally known as Sally Brockharts, Petitioner of Flint and Jeffrey Brockharts, Respondent, Appellee. Arguing on behalf of Ms. Kellens, Ms. Valerie Steiner. Arguing on behalf of the Appellee, Ms. Michelle M. Johnson. Hi, good morning everyone. Ms. Steiner, whenever you are ready, you may proceed. May it please the Court. Ms. Grossman is appealing the portion of the trial court's judgment order entered on September 4th, 2025. In which the trial court affirmed Mr. Rothbart's parenting time without modification as set forth in the original judgment. It is Ms. Grossman's position that the trial court erred in failing to reduce Mr. Rothbart's parenting time. Whether considered under the restriction statute or the best interest statute. What exactly were you asking for? What did you want modified? With respect to parenting time. With respect to parenting time, Ms. Grossman was requesting a reduction so that Mr. Rothbart's parenting time as it relates to all three children. The weekend time was reduced for the boys from Friday to Sunday. And for the minor child, ER, from Saturday overnight to Sunday. And then also midweek parenting time as well. Whether it's a dinner or overnight. And your position is that was in your petition to modify parenting time. The petition to modify parenting time asked generally for a reduction. So not specifically. It wasn't a specific request. In the request for relief, it specifically requested that the Monday dinners from 4 to 7 be eliminated. In addition to other reductions. So it was both. I just want to point out in Appellee's brief, it was misstated. And Appellee's brief indicated that our request was limited to just deleting those Monday overnights, which was incorrect. In what way? In what way? Because I'm looking at your petition and the wherefore asks for relief concerning Monday and B, Mother's Day and the birthday, which I'm kind of setting aside. Specifically on the record in 233? I'm not asking about the record. I think the pleadings form the issues in the case, both below and here. If you didn't amend your petition. I didn't, Justice. In paragraph A, it specifically states, modifying the parenting time set forth in the allocation to reduce Jeffrey Rothbard's parenting time, including but not limited to eliminating the weekly Monday parenting time, which presently takes place at 4 p.m. And additionally, there is a paragraph in the petition itself. The petition to modify. The petition to modify, correct. In the petition to modify itself. Paragraph 10. Paragraph 10. It also states that the parenting time schedule should be modified to reduce his parenting time with the minor children and to terminate the weekly Monday parenting time. So the only specific thing that was asked for is the Monday. Specific. Correct. Okay. Go ahead.  In the allocation judgment, to be clear, providing Mr. Rothbard with substantial parenting time, seven, in reality he received seven out of 14 days, though five are overnights, but two are Monday evenings from 4 to 7 p.m. This is very close to an equal schedule and allows Mr. Rothbard to have a significant impact on the minor children's day-to-day lives. Unfortunately for the children, the evidence is overwhelming that this much time with Mr. Rothbard has been detrimental and damaging to them since entry of the allocation judgment. In fact, the trial court's findings themselves were highly critical of Mr. Rothbard's day-to-day parenting, to the point of finding him to be a serious endangerment. Simply by looking at the trial court's order and reading its findings up to finding R, the only apparent conclusion one could have expected the trial court to reach is that Mr. Rothbard's parenting time should have been reduced. Up until finding R. You're saying that it's to abuse your discretion? I'm saying that with respect to the request for restriction, I'm saying that the trial court's findings were against or the trial court's result was against the manifest weight of the evidence. You cited the Mays case. I think you cited the Mays case. We did cite the Mays case. And that case says, and it seems well-reasoned to me, that there's a bifurcated or they just propose what I call a bifurcated standard of review. The issue of serious endangerment is reviewed against the manifest weight of the evidence. Trial court found that here. And the issue of what restrictions should be chosen to protect the children should be reviewed against an abuse of discretion. In your brief, I mean, just to be completely honest with you, you either glide over it or you conflate it, or sometimes, you know, I'm not suggesting it wasn't grounded in law. I think you even cite that standard in the Mays case. Whether you cite Mays or not, I don't know. But as you go through your argument, that seems lost. But it seems important to me to point out that your claim that under the restriction petition, his parenting time should have been reduced is reviewed against an abuse of discretion. I think that's extremely important. She found serious endangerment, and she also imposed restrictions. One, she reduced his parenting responsibilities. Two, she imposed counseling. And three, in my opinion, although I don't think she explicitly says this, under the other clause of the restriction statute, she imposed a parenting coordinator upon the parties. That is correct, Justice. I would like to correct Your Honor that we did argue that the selection of the restriction itself was an abuse of discretion, and that is on page 37 of our brief. You do. It's a quibble, and excuse me. But it does seem like at points you conflate it and say, well, it was against the manifest weight of the evidence. The first prong of the argument, finding that Mr. Rothbard's, that there was a basis to restrict, that is reviewed against the manifest weight of the standard. But the actual selection itself is an abuse of discretion. And the court did, the trial court in finding R stated that the actions of Mr. Rothbard, the pattern of his behavior towards Ms. Grossman and other adults, didn't rise to the level of a restriction. It wasn't clear whether or not she was saying it was a substantial endangerment or not. So just in case, we argued that the court's finding as it relates to parenting time as a restriction was against the manifest weight of evidence, but also that the actual fix itself was an abuse of discretion. And really, I'm glad your Honor brings up that point, because we believe that the fix that the trial court imposed was an abuse of discretion, and that was clearly supported by the evidence in the record. The court now asks, I mean, it seems to me that, and I guess this leads to my overall question concerning the entire position, which is, and I understand better now, I'm glad I asked these questions. You're right. There is that language in paragraph R, which, you know, I think takes up some of our time and energy here today. But setting that aside, she had a two-day hearing. She took the matter under advisement. She wrote a 15-page single-spaced ruling in which she very carefully goes through every single best interest standard. She finds serious endangerment, and she selects among the reduction in parenting time that she could have selected, she doesn't, but she selects other significant, in my opinion, restrictions. And clearly shows she's applying her discretion. Those same best interest standards are the standards that would be used analyzing your petition to modify. And so I guess my concern is that if the serious endangerment finding satisfies the predicate for substantial change in circumstance, she already analyzed the best interests and decided no. You know, despite the many, many, many, many things in the record that another judge might have looked at and said, you know what, this is so concerning, I'm going to restrict his parenting time too, or I'm going to modify his parenting time too. But, you know, ultimately, it's a tough standard. And given that she did analyze the best interests, and I know you parse it out a little bit and say, well, you know, not as it relates to the parenting time, but to me they're all in the same pot. I guess my question is, if this went back, what would it go back for? Where are we going with this? I think it would go back for, I think that the finding should be that the court did abuse its discretion in choosing that fix. The evidence in our opinion does demonstrate that the fix that the court imposed on Mr. Rothbart was arbitrary, not based in evidence, and it was unreasonable in light of the facts themselves. And let me point to some of those facts, Your Honor. So clearly the GAO pointed out that Mr. Rothbart had impulse control issues. The court pointed out ad nauseum that Mr. Rothbart's demeanor was improper and his commentary to Ms. Grossman was in disdain and other things of that nature. Ad nauseum isn't something I usually use describing a trial court opinion, but okay. Well, several, in several, in many, many instances. Because, honestly, reading up until R, it feels like the court is recognizing what Mr. Rothbart brought to the table in terms of how he acted around most individuals, if not, well, I'll say most individuals. So there were several points where she pointed out his demeanor and the problematic nature of it. But also the court pointed out that Mr. Rothbart told the GAO that he was in therapy for anger management for five years, that weeks before the trial he was in a new anger management program. In his response to Sari's petition, Ms. Grossman's petition to restrict, he made the excuse that, listen, I have this benign tumor on my brain, and once it was removed, then my impulse control should be okay. And that's in his response to the petition to restrict, Your Honors, pointing to the record 2426, Volume 3. So he has made excuses over the years that, listen, I've had issues, but I've taken care of them through therapy, through surgery. But even after that surgery, in August of 2024, Mr. Rothbart engaged in pretty horrendous behavior towards the ER's therapist, towards the GAO. The five years of therapy didn't help it. The surgery didn't help it. The trial court even pointed out that the court heard no evidence of his therapy, the anger management therapy, and pointed out that despite testifying or advising the GAO that he was in this new anger management program weeks before the hearing, that he still sent those emails to the GAO, those impulsive emails. So for the court, after all these findings, also the record is clear that he does not follow orders. The parties got rid of the second OP and entered an agreed order with the CLA that stated that Mr. Rothbart would not harass or abuse Ms. Rothbart. And he did. And subsequently we had a third OP entered. And that directly related to his behavior. So for the court, for the trial court to find that a fix to Mr. Rothbart's behaviors, which are, you know, replete in the record and the findings themselves, was more anger management therapy was clearly an abuse of discretion, clearly unreasonable. No reasonable person could have believed that after five years of anger management therapy, after, you know, weeks before the trial, here I'm going to do anger management therapy again, and a benign tumor being removed, which Mr. Rothbart states will improve his impulse control, that that was the resolution of this case. That will stop these behaviors, which have impacted the children, have bled down either directly or indirectly impacted the children. So the only option, the only reasonable option, the only conclusion, and considering all of these factors, the trial court could possibly have come to was that his parenting time, his substantial parenting time needs to be reduced because we need to shield the children from these behaviors. ER was clearly impacted. The boys witnessed Mr. Rothbart's behaviors towards ER, that the April 2025 incident in which he called ER overweight during a dinner with the boys. And then afterwards the boys weighed in their sister. You know, it's affecting them. The trial court found, and one of the best interest factors, that the children repeated or stated to the GAL that they wanted a fair and balanced parenting time schedule, which the court found was to, quote, appease Mr. Rothbart. That's not an independent expression of what their preferences are. Mr. Rothbart. Well, I have, I want to interject here. The trial court made a specific finding in this memo, I believe. Just a little history. This allocation judgment was about five years old at or about the time of this hearing. The children had gotten older, but the trial court recognized that the allocation judgment set this, set these times with some modification, and specifically said that there had not been a substantial change in circumstances to warrant a modification of parenting time because respondents' behavior had been consistent, and I'm assuming that goes back to when this allocation judgment was entered, and at present has not impacted the children enough to rise to a level of restriction of parenting time. Just for purposes of this argument, I'm reading this to say, Mr. Rothbart's been this way a very long time. And he, these children were born during this period of time, were raised by both parties during the period of time. He certainly doesn't like Ms. Grossman. I get that. I've been through enough divorces to know that process. And this is, this is who he is. And to take his children away for this is who he is or to prevent him from seeing his children is an extremely, extremely big move. May I respond, Your Honor? Yes. Okay. So I understand the context of Mr. Rothbart's petition. The court first found it wasn't in the best interest of the children to go to an equal parenting time schedule. Then the court said, therefore, the court, trial court, finds that there's not a basis to, there wasn't a substantial change in circumstances. And I think that nuance is important, but I'm going to move on to directly answer Your Honor's question. There has been a change. Whether, whether we're talking about a change in circumstance or a substantial change in circumstances, there has been. For example, Your Honors, this third OP that Ms. Grossman obtained against Mr. Rothbart dealt with Mr. Rothbart using the children, communicating directly to the children, texting them, like, obscenities and threatening to arrest their mother. There was no evidence of him texting his children like that during the pre-decree or during, at the time of the AJ. Furthermore, at the time of the allocation judgment, there is a provision in the allocation judgment which states that the parties are to cooperate if the minor children are in therapy. So they weren't in therapy at that time. And since then, there is a plethora of evidence that suggests that not only did Mr. Rothbart not support therapy in terms of his communications with Ms. Rothbart, but he interfered with it. He let the ER know that he did not support it. ER knew that he would not take her. He threatened the therapist. Those are all new facts that directly impact the needs of the children, directly. This is the time, if that's the case, he won't take her, then that would be your client's cue to make appointments when he didn't have the children or didn't have ER, which is, he doesn't have her as much as he has the boys. He doesn't, at that time, he had ER as much as he had the boys. As noted by the trial court, Ms. Grossman was the one who did, the majority of the caretaking functions for the children. But this was during a period of time when she was traveling and Mr. Rothbart had her time. And this is during, this is critical, your honors. It's during a period of time that even Mr. Rothbart admits that ER was in crisis. ER was in crisis. He was screaming fire, fire to the GAL just weeks later, but he refused to take ER to the hospital. He refused to help ER during his substantial parenting time. If ER is experiencing the self-confidence issues that Mr. Rothbart testified she was, eating issues that Mr. Rothbart testified she was, he did not seek consultation from ER's therapist or the pediatrician, both of whom he loathed, to help him help ER during his substantial parenting time. His actions impacted ER. He has substantial time. The party should, if you're going to have this much time with the children, you need to work with their professionals when they're in crisis. His alternative that he testified to was that he just researched online how to help ER, but didn't talk to her professionals, despite the fact that he has, he sees the children seven days out of a 14-day period. That's significant. There has been a change in circumstances, a substantial one. Mr. Rothbart's actions with the minor children have been incredibly impactful, damaging, and it shows in the record. And as I stated, Your Honors, reading this, reading this, just reading paragraph by paragraph in terms of the findings is clear. We don't even have to look outside of the court's findings themselves or recitation of the facts to clearly glean that the trial court abused its discretion. Its result, no one could have reached the result that no other judge could have reached the result that this judge did to protect the minor children. And it was error. Thank you. Ms. Jorgensen, do you have any questions? I do not. Just a shot. Just a shot. Pardon me. I'll let you go. Nothing further. Thank you. Thank you. You'll have an opportunity to respond if you choose to. All right, Ms. Jackner. Thank you, Your Honor. I'll have one moment just to bring my papers up. Okay. Oops. Okay. Good morning, Your Honors. Good morning. May it please the Court. My name is Michelle Jackner of the law firm of Louis, DuCanto, and Fleck, and I am joined by my co-counsel, Jessica Interlandi, and we represent the appellee, Jeffrey Rothbart, who is also here with us today. Today, as the appellant has the burden to, as a threshold matter, establish jurisdiction in this court, and then, if that burden is satisfied, then to also establish that there was error in the court's ruling that requires reversal and or remand. In response to Jeff's questioning... Just a quick question, Ms. Jackner. Yes. Did you make a specific motion outside of your briefing that this court did not have jurisdiction? No, we did not, Your Honor. It was on a very expedited briefing schedule, and I included it as part of our responsive brief, that there is an argument that we believe is valid that this court does not have jurisdiction in this case, because the appellant has the burden to establish jurisdiction in this case. The circuit court never specifically adjudicated Sari's petition for restriction, because it's not in the decretal portion of its order. There were five petitions that were pending at the time that the parties went to the hearing, the two-day hearing. And when we look at the court's order, in three different places in the order, in the very first paragraph of the order, it says, in the introduction to the findings of the order, and then also in the decretal portion, which is the most important portion of the order when we're talking about whether a judgment was rendered or not, the court specifically says that it adjudicates only four, not five. The one that's missing is the one that is being attacked on appeal, and that is an adjudication on the petition to restrict. It's not here. And there is case law, black-letter case law, that says that only the decretal portion of an order is operative as a judgment, and the rights of the parties are adjudicated by that portion alone, and not by the recitals or the findings. Now, we've talked a little bit about what was in some of the findings, and I think that we talked about paragraph R, and we've also talked about paragraph P. Now, paragraph P, in that paragraph, that is the only reference in the entire order to serious endangerment, the only one. We've checked it many times, and it's in paragraph P, and it's in the findings. So in that finding, in that particular paragraph, it has to do only with limiting Jeffrey's decision-making on extracurricular activities. It's limited to only that. The way that we read it, and it's a little bit dense, we will say that. It's a little bit hard to read and to parse out what the intent was. But what that paragraph does, it removes a three-week communication period for decision-making that was in the allocation judgment. So at the time that the judgment was made, he had final decision-making on extracurricular activities. That's all we're talking about. We're not talking about decision-making on anything else other than on the extracurricular activities. The parties were required to engage in a three-week period of conversation, which as you can see from the record and as we admit... That change in the parenting responsibilities, and excuse me for interrupting, but it was one of the things the trial court could do in response to the petition for restriction, we'll call it. And so it seems clear to me she did decide it. You're also, excuse me, the wife also asked for anger management counseling, a count two of her petition to restrict. The court granted that. The statute allows other relief that the trial court finds appropriate, and the trial court imposed a parenting coordinator, as I said, to opposing counsel. I'm sorry, because the majority of what was going on here, and as you can see from the record, is that there was a difficulty in communication between these parties. The parties are very contentious. They have had a very contentious relationship. No question about it, but my point being that it looks to me like she was deciding the petition to restrict. But the difficulty with that, Your Honor, is that there is no specific adjudication. She goes through each of the four. She says four in the very beginning, in the very first paragraph. She talks about four in the introduction to her findings, and then she has four specific paragraphs in the decreto portion of her judgment, which correspond to the four that she's talked about. And it appears from the transcript that when the parties began their hearing, that when she went through the things that were before her, and then the four, she ticked off the four. And then I believe opposing counsel did say to her, oh, and there's this other petition. And then she's like, oh, that's right, and she added it. It does appear that perhaps it might have slipped through the cracks at some point, because there was a lot before her. The trial court herself remarked that this had been such a contentious case that there were 15 petitions or motions in this round alone, and 27 orders. So that also tells us that she was very, very familiar with both of these parties, and with their interaction with each other. And that goes to the credibility finding. Because what's happening here... We, it is our position that, Your Honors, do not have that jurisdiction, because there was no specific adjudication of this particular petition. It's not here. As you said, Justice Mullin, we do agree that there is that count two. It was a two-count petition. And count two looks like she answered it, but it's not even in its own paragraph. It's kind of just put at the end of the decreto. Is there a degree of carefulness or formality or... I don't know what I'm looking for. Required of the trial court? I mean, it was before her, by virtue of the setting order from, I think, March 17, was brought up again at the beginning of the hearing. Well, she addressed it in a ruling. Well, it appears... How much more do we require? What do we tell trial courts? Yes. Well, we understand the trial courts. Especially busy family trials. Absolutely. And we understand that. But what it appears... I mean, from the way that she was structuring it, it appears that she was making it formal. Because she was mirroring... She had set forth before petitions and motions, and then she was mirroring them in the adjudication in the decreto portion. And this is missing. It's missing from all three places in the order when she speaks about what she is adjudicating. So it is our position that since the case law says that the adjudication occurs only in the decreto portion, that there was no adjudication of this particular petition. Yes. So, Your Honor, Justice Jorgenson, that is our position, that this court lacks jurisdiction to entertain this, because there was no specific adjudication of the restriction. And if you look at the entire brief, I think now that there's maybe a little bit of revisionist history, because I think now the arguments are being portrayed as it was all about best interests, but it was not. When you read the brief and you pick it up, it's really mostly about restriction. And the failure for the court to restrict Jeffrey's parenting time. That's what it's about. And now I think there's a little bit of a back-puddling going on at the oral argument, as opposed to what's in the written submissions that were given to Your Honors. I also want to answer a few things that came out of the initial exchange between opposing counsel and Your Honors. Justice Mullen, you asked about the Monday overnights. And, yes, the Monday overnights, that was the only thing that was specifically requested in Sari's petition. And that was in the modification petition. No, she asked to alleviate the three hours. I think it was your client who wanted an additional overnight. Oh, I'm sorry. Perhaps I misspoke. That to eliminate the Monday, that was in paragraph 10, as you pointed out, Justice Mullen, of the modification petition. And that was the only thing that was specifically stated. And I went back and I looked at the record, and the GAL's initial report, if you look at that report at page eight, and that's E8, the GAL states that in her interview with Sari, Sari told her specifically that, and I quote, Mondays have to go on Jeff's time, end quote. And I'm taking it from the GAL's report, because the Thursday to Monday morning was a very long period of time. Again, that's a quotation, a very long period of time. And she did not see the need for Jeff to also have Monday afternoons and evenings from 4 to 7 o'clock. So the elimination of Mondays was something that was always here in this. And even though now it said that there was more, it really was focused on the Mondays. She wanted to take away Jeff's Mondays, and the GAL actually did recommend to eliminate the Monday evening in her report. But the judge here, exercising her discretion as she can, because trial courts are not required to follow recommendations of the GAL reports, and they do have the discretion to do as they see fit based upon what's before them. And again, she had a lot of familiarity with these parties. She actually was the one who also conducted the order of protection hearing that happened in 2024. So she knew everything, and she was aware. She could assess the credibility of these parties better than anyone else could, because she had a lot of experience with them. I would like to... Let's talk a little bit about credibility, because you were going in that direction. Are credibility and truthfulness the same? Well, I mean, credibility, I believe, is something that is left to the trial court. The trial court assesses, in fact, we don't put somebody on a lie detector, right? So we can't know for certain if somebody is being truthful. But credibility is taken from a panoply of things. That, like, I can see everyone here on the bench, right? And then with my own eyes, I can assess certain things. It's the same thing, as your honors know. If you're sitting at the bench and you are hearing testimony from a party, you can see their demeanor. You can get a feel for their innate characteristics that you can't just get from a black and white page. Okay, but I get truthfulness. But doesn't credibility, I think, particularly relate to the fact that as you see something, as you just indicated, we may or may not be credible up here? You can make that decision later. But the fact remains that what I may ask or what he may ask or what he may say relates to what he believes it to be, what he saw and believes it to be. So the fact that she found him credible or all the witnesses credible, why is that so, I think, as evaluating what you said, why is it so unreasonable or outrageous? Oh, no, we agree with the trial court because the trial court did find everybody credible. And it is opposing counsel in Siri in their brief that are saying that those credibility findings must be set aside. Now, as your honors know, credibility findings are that you give high, high deference exactly for what we have spoken about because the trial court sits in a very unique position, right, and it's different for the trial court to be looking at somebody and to assess credibility. And also at page 27 of our brief, I want to draw your attention to some case law that we have there, and it's Young v. Herman, and it's a 2018 ILL Act 4th, 170-001, and it's paragraph 64. And I'll quote from that case. It says, in child custody cases, there is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and to determine the best interest of the child. And that goes back to the trial court being in a position to assess the credibility findings. It all ties together. And I think it's very important to consider a strong and compelling presumption in favor of the result reached by the trial court. Here, the trial court tailored the relief within her discretion, and there was no abuse of discretion in the relief that she tailored. It was specifically tailored. And, Justice Hutchinson, as you said, in terms of a serious endangerment finding, that is a very, very serious, it's a serious thing to find, serious endangerment, because, and this is something that is never mentioned in Sari's brief or by opposing counsel in their brief, the serious endangerment standard has been described by our Supreme Court in In Re Parentage of J.W., which is a 2013 case from the Illinois Supreme Court, as an, I quote, an onerous, stringent, and rigorous burden, end quote, to meet. The standard is an extraordinary one. And it's far more stringent than the best interest standard. So even looking at what has been argued here, that they have argued that the court erred in somehow analyzing the restriction statute, which, again, we believe was never adjudicated, but if the court did have that error, it really doesn't matter, does it? Because that's a much higher standard. If the court didn't find that they had met the standard for a restriction in parenting time under the best interest standard, which is a lower standard, then it doesn't make sense to argue that the court then, on the same facts, erred in not finding the higher standard. So it is, Justice Hutchinson, as you said, it is a very, very high standard. The court did not feel that it was met here. The GAL did not find serious endangerment. And I know that my time has concluded, but do Your Honors have any other questions? Your position is that there was never an adjudication on the restriction of parenting time petition. That is correct. Should we remand for a hearing on that? That would be up to Your Honors to do that, yes. Is there a reason not to? No. That is, it hasn't been adjudicated. The rights of the parties with respect to that specific petition have not been adjudicated in our view because it's not in the decretal portion. Let me ask you this then. These three conditions that were imposed would appear to be as a result of a decision on the restriction. Do those remain in effect or not? Well, again, it was a two, and that was somewhat of a conundrum that we were facing as well. I understand that. Because, again, it seemed like the judge was going in last step, right, with here's, this is petition number one. Here's the adjudication on number one. Here's petition number two. Here's the adjudication on number two. And so on. But then at the end of the decretal section, we have a few straights at the end. One of them is it appears to relate to count two of the petition to restrict. And we did acknowledge that in our brief. It does appear that there is a ruling on that. The anger management. The anger management, yes. And sent Jeffrey to the therapist to complete that. But, yes, I mean, if for management, yes, we are perfectly fine with that. And then you'd be right back here again? Perhaps. The modification of parenting time, it is your position that the court did a best interest analysis or did not do a best interest analysis? Did. Absolutely. This is the one where she didn't find substantial change in circumstance? So if we find that that's the wrong standard, then there was no best interest analysis, correct? Well, that goes. Thank you for asking that, Your Honor. That goes back to paragraph. So it's a paragraph P. And paragraph P again, because it's a long paragraph and this is in the findings. Let's see. Okay. So this is where the court says it is in the best interest of the children for Sari to make decisions relating to extracurricular activities to reduce conflict because she alone takes the children's preferences into account. So what the court is doing here, it's applying the best interest standards and it's removing that three week communication period for decision making. But here's the point. Is there a best interest analysis as to the issues that were raised in the petition to modify, not restrict, but to modify parenting, which, as you indicated, was the Monday afternoon? I'm sorry. The best interest went to the modification petition and the judge goes through every one of the statutory sections. With respect to the Monday afternoon. The Monday afternoon was in the modification petition. Correct. Yes. And it is your position that there was a best interest analysis as to whether or not that should continue or be discontinued? As to the Monday afternoon. Correct. Which is what everyone seems to agree on was the specific thing requested in the petition to modify parenting time. Well, yes, because the court found that Jeffrey could retain the Monday afternoon. And that there was, did she do that because she found no substantial change in circumstance or finding a change in circumstance than did a best interest analysis? Well, again, I'm sorry to keep bringing us back to Paragraph P because there's a. That's what you're relying on is Paragraph P. There's an important qualification in Paragraph P. Okay. Because in the middle of Paragraph P, when the judge is talking about the communications difficulties and things, it says, if you look at the, there's a sentence that says effectively. If you confirm that in the middle, it starts with effectively the existing allocation judgment already gave Saria the final decision. So this is a minor modification. Now, under the statute, if there is a minor, and I direct you to Section 610.5E2, under the statute, if there is a minor modification, and she's calling it this, but it's buried in the middle of the paragraph, there is no need for a showing of changed circumstances. So she did not need to find a substantial change in circumstances to make this minor modification. But she does go ahead in the next sentence and say, I found serious endangerment. Well. Under the order of protection. Yeah, I see she qualifies that language a little bit. Well, to the extent necessary. But her finding, in my opinion, her finding is her finding. She found serious endangerment. We, Your Honor, we definitely acknowledge that that is there. But we think that this entire paragraph is the reasoning, and it is limited to the court's removal of the three-week communication period and the decision-making, allocation of decision-making for the extracurricular activities. And that particular, the order of protection, that was, it's a reference to that, and it looks like it's just an additional, if needed, justification for that city modification. She took judicial notice of those proceedings and her order. So what happened at the O.P. hearing is part of the record in this case. I'm sorry, I didn't hear. I'm sorry. She took judicial notice of the O.P. hearing, didn't she, and the order and all of that? And so in my opinion, and maybe you think I'm wrong, all of that testimony and proof is before the trial court again on all these petitions. Agreed. Agreed with that, because she did take judicial notice. I would just note that, just to make the record perfectly clear, that in that order of protection, only CERI was the only protected party. It was never the children. And in any of the prior orders of protection, the children were never protected parties. And if you read through all of those order of protection proceedings, you can see it's a communication nightmare between both parties. And hopefully with some of what the court has done here, with limiting certain things and communications and kind of putting up guardrails, perhaps they can move forward if your honors affirm this and let the parties figure out how they can communicate peacefully for the best interest of their children and into the future. Anything else? You may summarize your position and we need to move on. Okay. Well, thank you very much. Your honors, thank you very much for allowing us to be here with you today. And we would ask that your honors affirm the judgment of the trial court and deny all of the claims of error that are set forth in the brief filed by Appellant Sari Grossman. Thank you very much. All right. Ms. Steiner. Thank you, your honors. Now, one of the first issues that was raised during Appellee's argument was the jurisdictional issue, which your honors correctly pointed out in various sections of the judgment order, the trial court did reference a restriction. I'd like to point out a couple others, though. Counsel stated that in Paragraph P, finding P was the only area in which the court referenced restriction. However, in the best interest factors analysis of best interest factors in Q, in Paragraph 1, the trial court specifically stated Sari desires to restrict Jeffrey's parenting time. So the court, and again, in finding R, the trial court specifically referenced Sari's request to restrict Jeffrey's parenting time. Furthermore, I believe it is the last Paragraph, Paragraph 10 of the order part itself discharges the guardian ad litem in standards subject to her fees, which if the petition to restrict were still pending and unadjudicated, the trial court would never have done that. So it was very clear that the trial court did adjudicate Sari's petition to restrict, and that this matter is probably before your honor. Now, the next issue that was raised by counsel was that counsel's suggesting there was revisionist history and that we didn't address the substantial change best interest analysis. However, on page 40 of our brief, our opening brief, we specifically addressed the issues of best interest and substantial change, and we did an alternative argument. One, if the trial court did not consider Sari's specific request for reduction, and the alternative, if the trial court found or if your honors found that the court did, then why it was an abuse of discretion or against the manifest weight of the evidence. So it was addressed. Also, as this issue was also addressed in the response, in terms of what the trial court could have done if the court found a change or substantial change in circumstances and analyzed the best interest, the court is not limited to specifically what the parties requested. Mr. Rothbart requested equal parenting time. Ms. Rothbart requested specifically delete the Mondays, reduce including that specific request, which we keep talking about, the Mondays. The trial court, after a hearing on the issues, if the trial court felt, well, this one doesn't quite work, but that one doesn't quite work, I personally think that, based on a review of the facts, that there is a resolution here, a reduction, but it's neither of what the two parties requested, therefore I can't grant it. That's simply not accurate. The court could, after analyzing the best interest factors, determine on its own what an appropriate parenting time schedule would be. The court didn't have to follow the guardian of items recommendation, which the trial court did not, in several instances. So that option was out there. And review, I know that it was pointed out whether or not the trial court actually analyzed change in circumstances or substantial change, and I appreciate the nuance given this court's recent decision in Reynolds on parenting time and change versus substantial change, but again, in R, it looks as if the court did it backwards. The court first found that Mr. Rothbart's request for equal parenting time was not in the children's best interest, therefore, the court specifically said, therefore, the court does not find a substantial change. So it didn't happen in the way that our legislature specifically states that analysis of the best interest factors should happen, and our substantial case law. The next area that was discussed was credibility, and I don't recall which your honor, but one of your honors pointed out that, asked the question, does credibility equate to truthfulness? And it does not equate to truthfulness, and we cite in our brief, and on page 12, Baker v. Hudson, 333 ILAP 486 at 493, which is a 5th district case from 2002, the longstanding rule is that positive direct testimony may be contradicted and discredited by adverse testimony, circumstantial evidence, discrepancies, omissions, or the inherent improbability of the testimony itself. In this case in particular, the court commented on Mr. Rothbart's demeanor. The court made findings that Mr. Rothbart had contradicted himself on a couple of occasions. The court commented on Mr. Rothbart's contradictions with the GAL, and one of them, he actually, he stated that a conversation following spring break in which the GAL testified that she gave Mr. Rothbart advice on how to help ER, he testified that was totally fabricated, never happened. But then in his responsive brief, he tells your honors, look, I followed the judges, the GAL's suggestions. I followed them. So he's contradicting himself even in his own argument. And then of course there is his demeanor. I see my time is up, so I will end it here. We're asking again, your honors, to find that the trial court erred, both in terms of Sari's request for a restriction and also a request for reduction of parenting time pursuant to the best interest standards. Thank you very much for your time today. Thank you. Thank you. All right. Thank you very much for your argument this morning and traveling here to make the argument. We appreciate the time and we appreciate the thoroughness of the briefs and the argument. We will take the matter under advisement and we will issue a decision in due course. We're going to take a short recess to prepare for our next case. Thank you. All rise.